UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———

CHRISTOPHER J. VELTHUYSEN,

                  Plaintiff,                      Case No. 2:17-cv-60

v.                                              Honorable Paul L. Maloney

DAWN EICHER, et al.,

                  Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Christopher J. Velthuysen, a state prisoner currently incarcerated at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action against Defendants Dawn Eicher and Jessica Knack. Both Defendants are Registered Nurses and were employed at the Kinross Correctional Facility (KCF) during the pertinent time period.

In Plaintiff's complaint, he alleges that he was seen by Defendant Eicher after he suffered an injury from playing basketball. Plaintiff states that he came down wrong on his leg and ran into the metal basketball stand. Plaintiff had to be carried to his unit following the accident. Plaintiff's friends carried him to health care after the desk officer called to make sure that someone could see Plaintiff. When Plaintiff arrived at health care, he told Defendant Eicher that he had no feeling in his leg, could not walk to and from chow hall without crutches, and was in "exquisite pain." Defendant Eicher asked Plaintiff if the pain was also in his hip or back. Plaintiff responded that he had pain in his lower left back. Defendant Eicher examined Plaintiff's foot and leg and issued him a detail for a hot water bottle. Defendant Eicher also scheduled a nurse callout for Plaintiff in fourteen days, but did not schedule a doctor's appointment for him.

Plaintiff's next nurse visit was with Defendant Knack, who told Plaintiff to remove his pants in front of everyone so that she could examine Plaintiff's leg. Defendant Knack then "screamed that [Plaintiff] tried to 'sexually assault' her." Plaintiff was given a hot water bottle and was escorted back to his unit. Plaintiff received a false misconduct ticket for the alleged sexual misconduct and had his security level increased. Plaintiff states that he was transferred to AMF shortly thereafter in April of 2016. The nurse at AMF told Plaintiff that his symptoms sounded like a "pinched nerve." Plaintiff claims that he is still suffering from numbness and pain and cannot walk

properly. Plaintiff asserts that the failure to give him a medical lay-in resulted in the loss of his job. Plaintiff also states that he was improperly charged a $5 co-pay for his medical appointments, despite the fact that emergency and follow-up appointments are not to be charged a co-pay.

Plaintiff claims that Defendants violated his rights under the Eighth and Fourteenth Amendments and seeks compensatory and punitive damages.

**Discussion**

I.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill*

*v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that both Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness

of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

In this case, Plaintiff was examined by Defendants who prescribed him a hot water bottle for his discomfort, but did not refer him to a doctor or give him a medical lay-in from his job. The Court concludes that Plaintiff's allegations constitute, at most, negligence. As noted above,

deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835. Plaintiff's allegations do not rise to the level of an Eighth Amendment violation. Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

Plaintiff claims that Defendant Knack wrote a false misconduct ticket on him, which resulted in his security level being increased. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of

security classification challenges. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Plaintiff's designation as a "Security Threat Group Member" is nothing more than a security classification used by the prison. Because Plaintiff does not have a constitutional right to a particular security level or classification, this claim is properly dismissed.

Plaintiff also claims that Defendant Eicher's failure to give him a medical lay-in from his job resulted in him being fired. The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

Finally, Plaintiff claims that $10.00 was improperly taken from his account to pay for co-pays for each of his appointments with the named Defendants. Plaintiff's due process claim regarding the loss of $10.00 to cover his co-pays is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot meet his burden. Plaintiff has not alleged that state post-deprivation remedies are inadequate. The Sixth Circuit has found that Michigan law provides "several adequate post-deprivation remedies" to a prisoner asserting improper removal of money from his prison account. *Copeland*, 57 F.3d at 480. In a number of cases similar to this one, the Sixth Circuit has affirmed dismissal where the inmate failed to allege and show that state law post-deprivation remedies were inadequate. *Id.* at 479-80 (money wrongly removed from prison account); *Lillie v. McGraw*, No. 97-3359, 1997 WL 778050, at *1 (6th Cir. Dec. 12, 1997) (officials allegedly

broke television); *Mowatt v. Miller*, No. 92-1204, 1993 WL 27460, at *1 (6th Cir. Feb. 5, 1993) (misapplication of money to a deficit in prison account); *Shabazz v. Lecureux*, No. 85-2014, 1986 WL 16140, at *1 (6th Cir. Dec. 5, 1986) (illegal appropriation of money from prisoner account). Accordingly, the court will dismiss Plaintiff's action.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: __May 2, 2017__          __/s/ Paul L. Maloney__
                                Paul L. Maloney
                                United States District Judge